UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

SICK KIDS (NEED) INVOLVED PEOPLE OF NEW
YORK, INC.,

                 Plaintiff,                15 Civ. 3756 (RWS)

   -against-                             OPINION

1561599 ONTARIO, INC., doing business as
ATHENA SOFTWARE, and GREG STANLEY-HORN,

                 Defendants.

------------------------------------------X

A P P E A R A N C E S:

      Attorneys for Plaintiff

      VEDDER PRICE P.C.
      1633 Broadway, 47th Floor
      New York, NY 10019
      By:  Joel S. Forman, Esq.
            Marc B. Schlesinger, Esq.


      Attorneys for Defendants

      DUANE MORRIS LLP
      1540 Broadway
      New York, NY 10036-4086
      By:  Allison Khaskelis, Esq.
            Lawrence H. Pockers, Esq.
            Sarah O'Laughlin Kulik, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/25/15

**Sweet, D.J.,**

Defendants 1561599 Ontario, Inc., doing business as Athena
Software ("Athena") and Greg Stanley-Horn ("Stanley-Horn",
collectively with Athena, the "Defendants") have moved to
dismiss the complaint filed by plaintiff Sick Kids (Need)
Involved People of New York, Inc. ("SKIP" or the "Plaintiff")
under the doctrine of *forum non conveniens*.  For the reasons set
forth below, the motion to dismiss is granted.

## Prior Proceedings

This case began as a state action, with SKIP's filing of a
complaint in New York Supreme Court on April 24, 2015.  (See
Notice of Removal, Dkt. No. 1 at 1.)  On May 14, 2015, the
Defendants filed a notice of removal, bringing the case into
this court based on 28 U.S.C. § 1332(a)'s grant of diversity
jurisdiction.[1]  (See id. at 2.)  The Defendants filed their
motion to dismiss on May 15 and amended it three days later due
to a filing error.  (Dkt. Nos. 4 & 6.)  Plaintiff filed its
opposition papers on June 1 (Dkt. Nos. 12 & 13), Defendants

---

[1] SKIP is based in New York City, while Athena is an Ontario corporation with
its principal place of business in Waterloo, Ontario.  Stanley-Horn is also
an Ontario citizen.  The amount in controversy in this case is well above
$75,000.  (See Notice of Removal, Dkt. No. 1, at 2.)

filed their reply on June 8 (Dkt. No. 15), and the motion was heard on June 24.

**Applicable Standard**

In federal court, the proper vehicle for enforcing a forum selection clause pointing to a state or foreign court is through the doctrine of *forum non conveniens*.  Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, 134 S.Ct. 568, 580 (2013).  To determine whether a foreign selection clause is valid, courts in the Second Circuit ask 1) whether the clause was reasonably communicated to the party resisting enforcement; 2) whether the clause is mandatory or permissive, i.e. whether the parties are required to bring the dispute to the designated forum or simply permitted to do so; and 3) whether the claims and parties involved in the suit are subject to the forum selection clause. Martinez v. Bloomberg, LP, 740 F.3d 211, 217 (2d Cir. 2014).[2]  If these three factors are present, then the forum selection clause is presumably valid and a party can overcome the presumption only by making a sufficiently strong showing that enforcement

---

[2] While the License Agreement at issue in this case contains a choice of law clause establishing that it is governed by the law of the province of Ontario, Canada, that clause controls only the interpretation of the Agreement's forum selection clause, while U.S. federal law controls whether or not to enforce it.  See Martinez, 740 F.3d at 214.

3

would be unreasonable or unjust, or that the clause is invalid for reasons such as fraud.   Id.

## The Motion to Dismiss is Granted

This is a contract-based case in which SKIP alleges claims for breach of contract, unjust enrichment, and negligent misrepresentation stemming from Athena's alleged inability or unwillingness to customize its "Penelope" case management software for SKIP's purposes, as allegedly agreed to by the parties.  (See generally Complaint, Dkt. No. 1 at 7 et seq.)

The facts are largely undisputed between the parties for the purposes of this motion.  In April 2014, SKIP and Athena began communicating about a potential transaction where SKIP would use Athena's Penelope software to manage its cases. (Complaint ¶ 21.)  On May 19, 2014, the parties signed two contracts: a License Agreement, covering the provision of the Penelope software, and a Support Agreement, covering the provision of technical assistance.  (Id. ¶ 24-25.)  SKIP alleges, and the Defendants do not dispute, that the Penelope software alone was insufficient for SKIP's needs, and that the Defendants made representations both before and after the signing of the contracts regarding their ability and willingness

to customize the Penelope software for SKIP's purposes.[3]   (See
id. ¶¶ 21, 26-29.)   Athena issued two work orders incorporating
customization requirements developed by SKIP and invoiced SKIP
for the work, but fell behind schedule.   (Id. ¶ 29-34.)   Athena
did not ultimately complete the customization with the
functionality that SKIP deemed necessary.   (Id. ¶ 35-37, 43-45.)

The central question in resolving this motion is whether
SKIP and Athena had two contracts or three.   Defendants seek to
enforce the forum selection clause in the License Agreement,
which reads:

> GOVERNING LAW: This License Agreement is governed by the
> laws of the Province of Ontario, Canada and, if the
> Software and Printed Materials were acquired within
> Canada, each of the parties hereto irrevocably attorns
> to the exclusive jurisdiction of the courts of the
> Province of Ontario without regard to conflicts of laws
> principles.   If the Software and Printed Material were
> acquired outside Canada, each of the parties hereto
> irrevocably attorns to the non-exclusive jurisdiction of
> the courts of the Province of Ontario, as the LICENSEE
> [SKIP] hereby agrees that any claim or action brought by
> the LICENSEE shall be commenced in the courts of the
> Province of Ontario.   Under no circumstances will the
> LICENSEE be able to bring forth a claim in the Federal
> Court of Canada unless that court has sole, exclusive
> jurisdiction over the matter to be adjudicated.

License Agreement, Dkt. No. 8 Ex. 1, ¶ 14.   It is undisputed
that SKIP acquired the software in New York.   SKIP, meanwhile,
argues that this dispute is not governed by the License or

---

[3] The customizations in question included "a robust ComHab Program, or
Community Habilitation Program, to include components such as timesheets,
enrollment, worker profile, electronic case-noting and waiver service
maintenance."   (Complaint ¶ 21).

Support Agreements, but rather by a third contract, which it terms the Customization Agreement.  The putative Customization Agreement was not a formal, signed contract like the License and Support Agreements, but rather arose out of "SKIP's written business requirements, Athena's responses to SKIP's written business requirements, Athena's work orders and reports, and the parties' written communications." (Pl.'s Opp. Br. at 5, accord Complaint ¶ 50-51.)  The emails, documents, and work orders that SKIP contends constitute the Customization Agreement do not include a forum selection clause.[4]

In order to determine whether to enforce the License Agreement's forum selection clause, the Court applies the four-part test laid out in Martinez and Phillips v. Auto Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007).

## A. The Forum Selection Clause Was Reasonably Communicated To SKIP

In its briefing, SKIP does not contest the proposition that the forum selection clause in the License Agreement was reasonably communicated to it; rather, it argues that the clause does not cover the instant dispute.  (See Pl.'s Opp. Br., Dkt.

---

[4] The Support Agreement, which covers "the terms and conditions under which the ATHENA SOFTWARE [sic] shall maintain and support the Software Product," also does not contain a forum selection clause.  (See Support Agreement, Dkt. No. 8 Ex. 2.)  However, neither side contends that the Support Agreement covers the instant dispute.

No. 12, at 8 (declaring that "the forum selection clause, which is embedded in the Governing Law section of the License Agreement, makes clear that the terms relate only to '[t]his License Agreement'" while noting that "there is no specific provision in the License Agreement that extends the forum selection clause to any other agreement.").)  Any objection would have been baseless, since the clause was communicated to SKIP "clearly and unambiguously" on the face of the contract. See Starkey v. G Adventures, Inc., No. 14-1361-cv, 2015 WL 4664237, at *2 (2d Cir. Aug. 7, 2015).

### B. The Forum Selection Clause Is Mandatory As To SKIP

Determining whether the language of the License Agreement's forum selection clause is mandatory or permissive must be done according to Ontario law, per the terms of the contract.  See Martinez, 740 F.3d at 218.

SKIP contends that the terms "irrevocably attorns" and "non-exclusive jurisdiction," used in the forum selection clause, make its effect permissive rather than mandatory under Ontario law.  It is certainly true that Ontario courts distinguish between exclusive jurisdiction clauses and non-exclusive attornment clauses in which the parties simply agree that jurisdiction is valid in one location without requiring

that cases be brought there.  See Hayes v. Peer 1 Network Inc.
(2007), 86 O.R. 3d 475, para 12 (Can. Ont. Div. Ct.).
Similarly, where the parties attorn to the jurisdiction of a
court, without any limiting language establishing exclusivity,
Canadian courts will treat the forum selection clause as non-
exclusive.  See, e.g., Mackie Research Capital Corp. v. Mackie,
2012 ONSC 3890, para 31 (Can. Ont. Sup. Ct. J.) (citing Old N.
State Brewing Co. v. Newlands Servs. Inc., [1998] B.C.J. No.
2474 (Can. B.C. C.A.)).  "Irrevocably attorns" are not magic
words, however, and when paired with additional language
establishing exclusivity, they can still establish a mandatory
forum selection clause.  See, e.g., Inrod Invs. Inc. v. Enquest
Enegry Servs. Corp., 2011 ONSC 308, paras. 7-9 (Can. Ont. Sup.
Ct. J.) (staying Ontario action on *forum conveniens* grounds
where contract provided that the parties "irrevocably attorn to
the exclusive jurisdiction of the Province of Alberta").[5]

    The contract between SKIP and Athena did not simply provide
that the parties irrevocably attorn to jurisdiction in Ontario.
Rather, it procived that "each of the parties hereto irrevocably
attorns to the non-exclusive jurisdiction of the courts of the

---

[5] Finding a forum selection clause to be exclusive does not end the inquiry
under Ontario law, since the clause can still be defeated if the plaintiff
can "show strong cause to not uphold that choice."  Inrod Investments, 2011
ONSC 308, para. 18 (quotation omitted).  That analysis is not required here
because under the Second Circuit's holding in Martinez the Court only applies
Ontario law in interpreting the contract, not in deciding whether to enforce
it.  See 740 F.3d at 214.

Province of Ontario, as the LICENSEE hereby agrees that any
claim or action brought by the LICENSEE shall be commenced in
the courts of the Province of Ontario." While the first clause,
read alone, would establish non-exclusive jurisdiction under
Ontario law, it is clear that the limiting language in the
second clause makes Ontario jurisdiction exclusive for any
lawsuit brought by the licensee, i.e., SKIP. Against this
proposition, SKIP argues (without citing any Canadian law) that
the provision is ambiguous and that any ambiguity must be
construed against Athena as the contract's drafter. This
unsupported argument is rejected because the provision is not
ambiguous; rather, it clearly establishes that the licensee can
sue Athena only in Ontario, while Athena can sue the licensee
either in Ontario (where the licensee cannot object to
jurisdiction) or elsewhere.

### C. The Claims At Issue In This Suit Are Governed By The Forum Selection Clause

The key question in this case is whether SKIP's claim that
Athena failed to customize the Penelope software as promised
amounts to a claim based on the License Agreement, which
contains a forum selection clause, or a new Customization
Agreement stemming from writings and representations made
outside and after the License Agreement's signing. However, the

9

choice is a false one, since under Ontario law the forum

selection clause governs this action in either scenario.

Although perhaps not as enthusiastically as American law,

Ontario law strongly supports the enforcement of forum selection

clauses:

> A forum selection clause in a commercial contract should
> be given effect. The factors that may justify departure
> from that general principle are few. The few factors
> that might be considered include the plaintiff was
> induced to agree to the clause by fraud or improper
> inducement or the contract is otherwise unenforceable,
> the court in the selected forum does not accept
> jurisdiction or otherwise is unable to deal with the
> claim, the claim or the circumstances that have arisen
> are outside of what was reasonably contemplated by the
> parties when they agreed to the clause, the plaintiff
> can no longer expect a fair trial in the selected forum
> due to subsequent events that could not have been
> reasonably anticipated, or enforcing the clause in the
> particular case would frustrate some clear public
> policy. Apart from circumstances such as these, a forum
> selection clause in a commercial contract should be
> enforced.

Expedition Helicopters Inc. v. Honeywell Inc. (2010), 100 O.R.

3d 241, para. 24 (Can. Ont. C.A.).  While SKIP might point to

its Customization Agreement argument and contend that its claims

"have arisen [] outside of what was reasonably contemplated by

the parties when they agreed to the clause," id., any such

assertion is belied by allegations in its Complaint that SKIP

and Athena had extensive conversations about the need for a

customized version of the Penelope software prior to the License

Agreement's signing, and that SKIP only agreed to "transition

10

its case management system to Penelope and engage Athena" on the basis of representations that the customization would be performed.  (Complaint ¶¶ 21-23.)

Moreover, SKIP's claims are so intertwined with the License Agreement that the forum selection clause would be implicated under Ontario Law whether the claims actually arose out of the contract or not.  In Kozicz v. Allen Preece, 2013 ONSC 2823 (Can. Ont. Sup. Ct. J.), an Ontario plaintiff attempted to evade a forum selection clause requiring claims to be brought in Delaware "by structuring his predominate claims based on non-contractual claims committed in Ontario." Id. para. 28.  The Ontario Superior Court of Justice nonetheless applied the forum selection clause in the contract the plaintiff had constructed his pleading to avoid, reasoning that "[i]t is inevitable that the Subscription Agreement will be before the court both as part of the factual narrative and also undoubtedly because [defendants] will rely on the contract in their defence [sic]. Further, the [plaintiff's] tort misrepresentation claim is so intertwined with the contract claims that they must be dealt with together." Id.

An Ontario court would find that the Ontario forum selection clause governs this case for the same reason the Delaware forum selection clause governed in Kozicz.  Even if SKIP's claims arise from separate representations and

11

agreements, the License Agreement can be expected to figure
prominently in the litigation, and Athena will almost certainly
invoke the License Agreement in its defense.  SKIP's claims for
unjust enrichment and negligent misrepresentation are intimately
connected to the negotiations leading up to the signing of the
License Agreement, just as the misrepresentation claim in <u>Kozicz</u>
was connected with the contract the plaintiff in that case tried
to avoid.  In sum, whether or not SKIP's claim actually arises
out of the License Agreement, it is so intertwined with the
License Agreement as to implicate its forum selection clause
under Ontario law.

Since the forum selection clause "was communicated to the
resisting party, has mandatory force and covers the claims and
parties involved in the dispute, it is presumptively
enforceable."  <u>Martinez</u>, 740 F.3d at 217.


**D. Enforcing the Forum Selection Clause Would Not Be
Unreasonable Or Unjust**

SKIP devotes a single paragraph to its contention that
litigating in Ontario would be unreasonable or unjust, stating
that New York is "uniquely suited to hear this case" because
SKIP is a New York nonprofit aiding chronically ill and disabled
children, and that SKIP should not be forced to litigate in
Canada "because of the monetary costs involved."  (Pl.'s Opp.

12

Br., Dkt. No. 12, at 17.)  Neither of these arguments is sufficient to overcome the forum selection clause's presumptive enforceability.  See Akers Biosciences, Inc. v. Martin, No. 14-cv-8241, 2015 WL 1054971, at *4 (S.D.N.Y. Mar. 10, 2015) (discussing the "heavy burden" faced by plaintiffs seeking to overcome a presumptively valid forum selection clause).

First, SKIP "has made no showing whatsoever that [it] would not receive a fair hearing on [its] claims in Canada." Starkey, 2015 WL 4664237, at *4.  While SKIP is certainly a sympathetic plaintiff, that status, without more, is insufficient to invalidate the clause contained within the contract it bargained for.  The Second Circuit recently considered such an argument in Starkey, when a plaintiff argued that she should not be required to litigate in Canada because she was a survivor of sexual assault.  Judge Lohier noted that, like SKIP, she could point to no federal cases or statutes declaring a public policy that would invalidate the clause on the basis she asserted, and he declined to carve out any sort of new doctrine on that basis, "hesitat[ing] to draw a judicial line for such a clause that distinguishes one set of victims from another." Id.  The Starkey opinion also rejected a money-based argument against litigating in Canada, noting that while suing in Ontario might involve "time and expense," those inconveniences were "the obvious concomitants of litigation abroad, rather than

13

circumstances that would prevent a plaintiff from bringing suit." Id. (citing Phillips v. Audio Active Ltd., 494 F.3d 378, 393 (2d Cir. 2007)) (quotation omitted).

In sum, the forum selection clause in the License Agreement was reasonably communicated to SKIP and is both mandatory and applicable to the instant dispute under Ontario law.  Since SKIP cannot show that it would not be unreasonable or unjust to require its claims to be litigated in an Ontario court, the Defendants' motion to dismiss for *forum non conveniens* is granted.[6]

## Conlcusion

For the reasons stated above, the Defendants' motion to dismiss is granted.  The Complaint is dismissed without prejudice to re-filing in the courts of Ontario, Canada.

---

[6] Defendants also contend that the Complaint must be dismissed against defendant Greg Stanley-Horn due to a lack of personal jurisdiction.  Since the forum selection clause in the License Agreement is applicable to claims against Stanley-Horn as well as those aimed at Athena directly, see Cfirstclass Corp. v. Silverjet PLC, 560 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) ("A non-party to a contract may invoke a contractual forum selection clause if the non-party is closely related to one of the signatories . . . ." (quotation omitted)), and because the personal jurisdiction issue involves tricky factual questions regarding what business Stanley-Horn transacted and where he transacted it, the Court declines to reach the jurisdictional question.  See In re Facebook, Inc., Initial Pub. Offering Sec. & Derivative Litig., No. 14-1445, 2015 WL 4490644, at *7 (2d Cir. July 24, 2015) (affirming grant of motion to dismiss on non-merits threshold issue without addressing complex jurisdictional matter first).

It is so ordered.

New York, NY
September 20 , 2015

ROBERT W. SWEET
U.S.D.J.